INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION (CIO), et al. v. WIRTZ, Circuit Court Judge.

No. 11568.

United States Court of Appeals
Ninth Circuit.

Sept. 27, 1948.

Rehearing Denied Nov. 16, 1948.

---

[2] In 1948 Revision, 18 U.S.C.A. § 602.

Gladstein, Andersen, Resner & Sawyer and George R. Andersen, all of San Francisco, Cal., Harriet Bouslog and Myer C. Symonds, both of Honolulu, T. H., for appellants.

Walter D. Ackerman, Jr., Atty. Gen. and Rhoda V. Lewis and Michiro Watanabe, Deputies Atty. Gen., of Territory of Hawaii, and C. Nils Tavares of Honolulu, T. H. (Vitousek, Pratt & Winn, of Honolulu, T. H., of counsel), for appellee Wirtz.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment of the Supreme Court of the Territory of Hawaii, denying appellants a writ of prohibition prohibiting Judge Wirtz, of the circuit court of the second judicial circuit of the territory, from issuing a proposed injunction to control the acts of appellants in their labor dispute with the Maui Agricultural Company, Limited. It is agreed that the proposed injunction was to be issued in a labor dispute covered by the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq., and that it violates the provisions of the Act if that Act is applicable to the territorial courts of Hawaii.

Appellants' contention here rests on the proposition that the territorial circuit court is included in Section 13(d) of the Act, 47 Stat. 73, providing that "The term 'court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, in-

cluding the courts of the District of Columbia."

Long before 1932, when the Norris-La Guardia Act was enacted, the phrase "court of the United States" had been given a definite and restricted meaning by the Supreme Court. The phrase, without more, means solely courts created by Congress under Article III of the Constitution and not territorial courts. American Ins. Co. v. 356 Bales of Cotton, 1 Pet. 511, 546, 7 L.Ed. 242, and many other cases summarized in McAllister v. United States, 1890, 141 U.S. 174, 183, 11 S.Ct. 949, 35 L.Ed. 693.

Appellants contend that the clause "means any court *of the United States* whose jurisdiction *has been* or *may be* conferred" etc., should be construed as if the four words "of the United States", limiting courts to Article III's courts, were stricken therefrom and the Act held to cover all the courts now or hereafter created by Congress, which would include territorial courts created under Article IV of the Constitution. This we cannot do. Such making nugatory the four limiting words would violate the rule that words in a statute, if possible, should be given effect.

What Congress desired to make clear in the clause "means any court of the United States" is that the Norris-La Guardia Act is to apply not only to any existing Article III court which "has been" created but also to any Article III court which "may be" hereafter created. The clause thus interpreted gives the term "court of the United States" the wider significance referred to in Mookini v. United States, 303 U.S. 201, 205, 58 S.Ct. 543, 82 L.Ed. 748. Since this is a rational construction, we well may look to the reports of the committees of the House and Senate on the Norris-La Guardia bill for any different interpretation by them.

On the contrary, in the report offered by Congressman La Guardia, an inexperienced legislative draftsman, appears the following with reference to Section 13(d) *expressly limiting* the provisions of the bill to those courts created by *Congress under Article III, Section 1 of the Constitution:*

"The Constitution of the United States in Article III, section 1, provides:

"The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish.

"The provisions of the bill are *expressly limited* (sec. 13(d) ) to courts whose jurisdiction has been or may be conferred by the Congress, under the foregoing provisions of the Constitution. The Congress having the power to establish, and confer jurisdiction upon, the courts in question, it can not be questioned that it has the power to restrict or curtail the exercise of their powers, as proposed in this bill. * * *" (Emphasis supplied.)

This limitation to the federal courts as distinguished from other courts of the prohibition against the interdicted injunctions is clearly followed throughout the entire report of the House committee. The Congressional power invoked is described as "power over the *federal* judiciary generally." This is followed by a chapter entitled "A. Congressional power over the *Federal* courts generally," again referring to the courts created under the provisions of Article III, Section 2. Again a discussion is set forth at length in a chapter entitled "B. Power of Congress over Federal equity jurisdiction." The conclusion states "The power of Congress over the equity powers of the *lower Federal courts* is implied in congressional power over these courts generally, as exercised in the whole series of judiciary acts, and as recognized by a continuous current of judicial authority." (Emphasis supplied.)

In the Senate report there is discussed "The limitation of the jurisdiction of *Federal* courts to issue injunctions in labor disputes has been a subject of public discussion for many years." The claimed wrongful use of injunctions by "State and Federal courts" is discussed over several pages of the report. Nowhere in the 41 pages of the reports of both committees is mentioned the word "territory" nor is there any claim that there were any abuses of the injunctive power in any of the territories. Nor is there in the 68 pages of fine print of testimony of Senator Norris and Congressman La Guardia and the other Con-

gressmen any mention of the territorial courts, or abuses of such courts to be prevented.

Provisions of the Norris-La Guardia Act other than Section 13 present inconsistencies with the claimed interpretation of appellants. Section 10 of the Act providing for a review of the circuit court of appeals of the issuance or denial of the temporary injunctions states that the appeal to the circuit court of appeals ,is taken "as in ordinary cases."[1] In *ordinary* cases no such appeal is allowed from the circuit court of a territory. So far as the Territory of Hawaii is concerned, the appeals are from its federal district court and its territorial supreme court. The purpose of this Section 10 is to provide that the appeal having been taken from a federal court as in *ordinary* cases, it is to receive from the circuit court of appeals the *extraordinary* treatment of "the greatest possible expedition," a right not given in ordinary appeals from injunctions provided in Section 129 of the Judicial Code,[2] as it was in 1932 when the Norris-La Guardia Act was passed.

Section 11[3] treating of contempt proceedings for disobedience of injunctions in labor disputes permitted by the Act, provides that "the accused shall enjoy the right to a speedy and public trial by an impartial jury of the *State* and *district* wherein the contempt shall have been committed." Obviously, Congress would have inserted the word "territory" after the word "State" if it contemplated contempt proceedings for disobedience of injunctions of territorial courts. Congress, when it intends to include territorial courts, in the phrase "court of the United States" does it expressly. In the Act providing for intervention by the United States in consti-

tutional cases, and for regulations of the issuance of injunctions restraining enforcement of acts of Congress, it is stated that "the term 'court of the United States'" "means the courts of record of Alaska, Hawaii, and Puerto Rico, the United States Customs Court, the United States Court of Customs and Patent Appeals, the Court of Claims, any district court of the United States, any circuit court of appeals, and the Supreme Court of the United States." Act Aug. 24, 1937, § 5, 50 Stat. 753.[4]

Appellants rely strongly on their claim that the Hawaiian laboring population of 1932 consisted of mixed races of various languages and that it had little labor organization, and what existed was not effective. No doubt under such conditions labor might suffer at the hands of its employers and more than likely had there been an efficient labor organization there it would have come against just such abuses of the injunction as the testimony of Norris and La Guardia shows existed on the mainland. However, it is clear from the reports and testimony in Congress, referred to supra, that in 1932 no need for the prohibition of the labor dispute injunction in the territory was brought to the attention of Congress and it did nothing about it.

■ Appellants also rely upon the contention that since the Norris-La Guardia Act amends the Clayton Act and the Clayton Act interdicts certain dealings in intraterritorial commerce, the "court of the United States" of the Norris-La Guardia Act includes territorial courts. This contention ignores the fact that, so far as the Clayton Act concerns injunctions, it is in its Section 20, 29 U.S.C.A. § 52, which expressly limits such relief to "court of the United States" reading,

---

[1] "Review by Circuit Court of Appeals of issuance or denial of temporary injunctions; record; precedence.

"Whenever any court of the United States shall issue or deny any temporary injunction in a case involving or growing out of a labor dispute, the court shall, upon the request of any party to the proceedings and on his filing the usual bond for costs, forthwith certify as in ordinary cases the record of the case to the circuit court of appeals for its review. Upon the filing of such record in

the circuit court of appeals, the appeal shall be heard and the temporary injunctive order affirmed, modified, or set aside with the greatest possible expedition, giving the proceedings precedence over all other matters except older matters of the same character." (Mar. 23, 1932, ch. 90, § 10, 47 Stat. 72.)

[2] New 28 U.S.C.A. § 1292.

[3] 29 U.S.C.A. § 111, now 18 U.S.C.A. § 3692.

[4] New 28 U.S.C.A. § 451.

"No restraining order or injunction shall be granted by any court of the United States, or a judge or the judges thereof, in any case between an employer and employees, or between employers and employees, or between employees, or between persons employed and persons seeking employment, involving, growing out of, a dispute concerning terms or conditions of employment, unless necessary to prevent irreparable injury to property, or to a property right, * * *"

To this is added in Section 21[5] for enforcement of injunctions allowable under Section 20, the phrase "or any court of the District of Columbia." The specific provisions confining the injunctive relief to these particular courts control any general language concerning the area of the regulation of commerce.

We hold that the Norris-La Guardia Act does not affect the Hawaiian circuit court and affirm the judgment denying a writ of prohibition against the appellee judge of that court.

See also 5 Cir., 164 F.2d 341.

Henry T. Chance, of Augusta, Ga., for appellant.

Dunbar Harrison, of Savannah, Ga., and J. Henry Howard, of Sylvania, Ga., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.